UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 08-21803-CIV-ALTONAGA-BROWN

ANNA MARIA COHEN,

    Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This cause is before the Court on the Motion for Summary Judgment filed by the Plaintiff (DE 13) and the Motion for Summary Judgment filed by the Defendant (DE16) pursuant to an Order of Reference entered by the Honorable Cecilia M. Altonaga, Untied States District Judge. The issue before the Court is whether the record contains substantial evidence to support the denial of benefits to the Plaintiff, Anna Maria Cohen (hereinafter "Cohen" or "Plaintiff").

## FACTS

### Administrative Proceedings

Plaintiff filed an application for disability insurance benefits under Title II of the Act, 42 U.S.C. §§401 et seq. ( T. 91-93) and an application for supplemental security income (SSI) benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq.(T. 589-91).[1]

---

[1] Section 405(g) of the Act provides for judicial review of a "final decision" of the Commissioner of the Social Security Administration under Title II. Section 1383(c)(3) of the Act provides for judicial review of a "final decision" of the Commissioner of the Social Security Administration under Title XVI.

Plaintiff stated that she was born in 1963, and alleged that she became disabled beginning November 20, 2002. T. 91. However, at the administrative hearing, Plaintiff amended her onset date to September 23, 2003. T. 594. In her Disability Report she alleged disability due to severe arthritis, obesity, severe depression, circulation problems, high blood pressure, kidney problems, and severe asthma. T. 101. Plaintiff's past relevant work history is as a cashier, assembly worker, and chef. T. 102. Plaintiff's applications were denied initially and on reconsideration (T 33, 35, 52-59, 577-88).

**Plaintiff's Testimony Before ALJ**

On December 4, 2007 a hearing was held before the Administrative Law Judge ("ALJ"). Plaintiff testified that she was 44 years old and lived with her husband, mother in law, and three children. Plaintiff completed the 10th grade and does not speak English but can understand a little bit. Plaintiff has never driven. Plaintiff further testified that in September, 2003 her kidneys started getting damaged and she had a lot of pain in her legs and back. T. 597. Plaintiff, who is 5'4" tall, weighed 358 pounds and was taking twelve medications at time of the hearing. T. 605, 598-99. Plaintiff additionally stated that she suffers from daily migraines, as well as osteoarthritis in her knees and spine. T. 604.

Plaintiff further testified that she had been receiving treatment for depression for three years. T. 599-600. She stated that she cannot sleep, "cannot be quiet or in peace," doesn't like to be surrounded by people and doesn't want to do anything, and sometimes spends the whole day in bed. T. 600. She never goes shopping or does housework. T. 600-01. She does not visit friends but does go to mass twice a week for an hour at a time. T. 601.

Plaintiff testified that she cannot stand, go down, stretch her arms, carry anything that is heavy, or lift her legs, and had been using a cane for over a year. T. 601-02. Plaintiff further testified that

2

she has trouble being seated for two hours, and had to change to an armless chair during the hearing because it was more comfortable. T. 604-05. She stated that she can only stand for a few minutes without aid. T. 605. She described her concentration and attention as "very poor," and stated that sometimes she hears voices at night. T. 606.

**Medical Evidence**

From November 2000 through July, 2003, Plaintiff received treatment at QualMed Clinic of Miami, Inc. for headaches, cold with cough and congestion, left flank pain, and gynecological complaints. An x-ray of the left knee on July 7, 2003 documented narrowing of the medial and femoral patellar joint spaces compatible with degenerative osteoarthritis. T. 300.

Also in 2003, plaintiff had complaints of a headaches which lasted two days and six days, as well as an ovarian cyst. T. 250-52. In December 2003, Plaintiff was examined by neurologist Guillermo Blanco, M.D., regarding her complaints of headaches. T. 244-45. Examination, which included mental status, cranial nerves, motor, sensory, coordination, deep tendon reflexes, plantar responses and gait, was "absolutely normal" except for significant obesity. T. 245. Topomax was prescribed. T. 244-45.

In August 2004, Plaintiff sought treatment for complaints of back pain for three months. There was no tenderness on examination, and her weight was 330 pounds. The assessment was of obesity, left flank pain, and history of kidney stones. T. 248.

In January, 2005, Plaintiff, who weighed 338 pounds, underwent a consultative physical examination by Mark LaPorta, M.D.. Plaintiff complained of difficulty standing, migraines four or five times a month that can last up to six days, depression, asthma, insomnia, intestinal pain, shortness of breath and tiredness. T. 318-19. She stated that she "keeps the house." T. 319. On examination,

although the doctor noted that all joint groups and ranges of motion were within normal limits, he also stated that her limitation of range of motion had to do with fatty tissue of her joints and knees. T. 320-21. Dr. La Porta considered x-rays of Plaintiff's hip, lumbosacral spine and right knee, which were all unremarkable. T. 322. The examiner noted that Plaintiff made little effort to put pressure on his hand. Her motor strength and grip were 5/5 throughout. Plaintiff could turn a doorknob, pick up coins, and button and unbutton buttons with either hand. She did not use an ambulatory assistive device and was able to get on and off the table, in and out of a chair, and dress and undress without difficulty or assistance. She did not limp. She refused to squat and to walk on her toes. Mental status was unremarkable, and Plaintiff denied hallucinations or delusions. T. 321. Impression was "morbid obesity, getting worse, not on any treatment, probably delusions possibly hysterical." Arthritis was not demonstrated and was certainly "not severe." T. 322. Dr. LaPorta concluded that Plaintiff "has a laze fair [sic] attitude and is in denial about her weight and specifically its contribution to her problems ... ." T. 322. He declined with make a final adjudication or Plaintiff's ability to work "without complete readjustment of her medications and minimizing of it." T. 322.

In February, 2005, Plaintiff underwent a psychiatric evaluation by Antonio J. Fernandez, M.D., at which her mood and affect appeared depressed and anxious. She denied visual or auditory hallucinations. Plaintiff's memory and cognition were intact and her concentration was average. Dr. Fernandez diagnosed Major Depressive Disorder, Recurrent, Severe Without psychotic features with comorbidity anxiety. Prognosis was guarded. T. 324-25.

On March 4, 2005, a State Agency non-examining review physician determined that Plaintiff's medical impairment would result in a mild degree of limitation in restriction of activities of daily living and in maintaining social functioning, and a moderate difficulty in maintaining concentration,

persistence or pace. T. 336. On March 25, 2005 State Agency physician James M. Andriole, D.O. opined that Plaintiff would have the ability to lift 25 pounds frequently, 50 pounds occasionally, and sit, stand and/or walk 6 hours of an 8 hour workday, the equivalent of medium work. T. 345. On reconsideration on September 8, 2005, State Agency physician Gary Carter, D.O. agreed with that assessment. T. 367.

On June 20, 2005, Plaintiff had a Bio-Psychosocial Assessment at Miami Behavioral Health Center, Inc. at which she complained of depressed mood and sleep problems for several months. T. 395. She was noted to be disheveled and agitated, but cooperative. Her affect was appropriate and her mood was depressed and anxious. T. 396. She was alert to time and place, and her insight, judgment and reliability were noted to be fair. T. 397. The diagnosis was major depressive disorder. T. 397A.

At several subsequent visits during late 2005, Plaintiff reported feeling depressed mood and anxious symptoms and auditory hallucinations. However, Plaintiff reported on March 10, 2006 that she was "feeling better from her depressed mood," that she has "eliminated her anxious symptoms during the last three months" and denied hallucinations and delusions. She was noted to have "shown favorable response to treatment." Her insight, judgment and reliability were noted to be good. T. 399. At that time, Plaintiff was taking Risperdal, Prozac, Clonazepan, Seroquel, and Atarax. T. 399-400.

Plaintiff returned to the Center in April and May, 2006 where she appeared in a depressed mood, but her insight, judgment and reliability were good. T. 409-410.

On January 5, 2006, Plaintiff was seen by Dr. Oviedo of QualMed of Miami for complaints of back pain. Examination showed tenderness in the left lumbar area and the assessment was of sacrolumbalgia and migraine headache. Dr. Oviedo prescribed some medication and a 2000 calorie

diet. T. 487. In August, 2006, Plaintiff complained of abdominal pain and was found to have an abdominal cyst. T. 459.

On February 27, 2007 Plaintiff returned to Qualmed with complaints of cough and headache. Examination showed Plaintiff was alert and oriented, and had no motor deficit, but did have edema. She was prescribed a diuretic. T. 485-86. On May 15, 2007, Plaintiff saw Dr. Oviedo with complaints of hemorrhoids, and examination showed she was alert and oriented and had no edema. T. 483. In the summer of 2007, Plaintiff was found to have cystic ovaries and a right renal calculi. T. 521, 429.

On July 10, 2007, Dr. Oviedo completed a Medical Assessment of Ability to Do Work Related Activities in which he opined that Plaintiff could stand and/or walk two to four hours in an eight-hour workday, and could sit two hours at a time, as evidenced by the finding that Plaintiff "even got short of breath by transferring from chair to exam table." T. 493-94. He opined Plaintiff could occasionally balance, but was unable to climb, stoop, crouch, kneel, or crawl, as supported by a finding of Plaintiff's "extreme obesity affecting endurance, exercise tolerance and with damage to lower extremities[,] joints and lower back." T. 494. Dr. Oviedo further opined that Plaintiff was unable to perform light or sedentary work activity on a full-time basis, and that this impairment would last "longer than 1 year, most likely indefinitely." T. 496.

Plaintiff returned to Miami Behavioral Center on August 6, 2007 where she appeared depressed with impaired memory. Diagnosis was of Major Depressive Disorder, Recurrent with Psychosis. T. 525-27. A final note of October 5, 2007 indicated she was improving on present treatment. T. 522.

On August 13, 2007, Vivian Gonzalez-Diaz, Ph.D., M.S., performed a mental consultative examination during which she observed that Plaintiff had a "normal" gait. Plaintiff's complaints were of "decreased desire to perform chores or enjoy pleasurable activity," "feels depressed every day for

most of the day, wants to be lying down in bed, has decreased appetite, and does not want to socialize with others." Plaintiff stated that her symptomology "became prevalent four or five months ago," although she had prior episodes of depression beginning at age twelve after her parents' divorce, up until 2001 due to her father-in-law's death. T. 497. Plaintiff also advised that she had been hospitalized at the age of fifteen due to panic attacks. T. 498.

Plaintiff told Dr. Gonzalez that she showers and cooks almost every day, but her mother-in-law cleans the house. Although Plaintiff stated that her husband manages the money and she does not know how to handle a checkbook, she was able to execute a hypothetical store purchase, and demonstrated understanding of the functions of a bank. Plaintiff further stated that she washes her clothes once a week and goes grocery shopping with her husband. Plaintiff stated that she did not drive because she didn't like it, but occasionally takes the bus. She also said that she watches TV and enjoys puzzles and occasional reading. T. 498.

Plaintiff reported her medical history to include hypertension, morbid obesity, back pain, lower extremity pain and kidney stones. Her medications were Propranolol, HCTZ, Provira, Percocet, Celebrex, Prozac, Risperdal, Clonazepam and Seroquel. Dr. Gonzalez noted that Plaintiff seemed "mildly depressed" and was oriented to time, place and person. Her thought processes and stream of thought were normal. There were no obsessions or compulsions noted, but Plaintiff reported "mild preoccupations as she worries about her health." Plaintiff also reported hearing her name being called about five times a month, but Dr. Gonzalez noted that Plaintiff's complaint "does not appear to be classical hallucinatory activity." T. 499. Plaintiff reported a decreased desire to enjoy pleasurable activities, lack of appetite and trouble sleeping. Her intellectual level was noted to be "average" but her "fund of information" was poor. T. 499-50. Her judgment was "fair" and her motivation was

"good." Dr. Gonzalez noted that Plaintiff performed on the MMPI test "in such a way as to invalidate the test," by answering "an unusually large number of extreme items in the deviant direction," which was probably indicative of "an indiscriminate and exaggerated response pattern." T. 500. In sum, Dr. Gonzalez noted that Plaintiff "appeared only mildly depressed" and was fully oriented. She was diagnosed with Major Depressive Disorder Recurrent, Mild. T. 501.

On August 15, 2007, orthopedic surgeon Ubaldo Rodriguez, M.D. performed a consultative examination. T. 506-16. Plaintiff complained of back pain sitting or standing for thirty minutes, tremor on both knees when standing, and back pain radiating to the left thigh when she walks two blocks. Plaintiff reported that she needed a cane to walk, but did not bring it to the examination with her. T. 506. She stated that she feels better lying down but has to change position frequently. She also complained of pain in her hips and knees on and off. She reported taking Celebrex 200 mg. daily and local steroid injections in the back. T. 506.

Examination showed no limp, but she refused to walk on her heels or toes. Dr. Rodriguez reported no spasm in the lumbosacral spine, and stated that Plaintiff referred to pain on the lumbar spine on palpation and movement but with "a lot of exaggeration" T. 506. Flexion was 50 degrees, extension 10 degrees, lateral bending 25 degrees, rotation 25 degrees bilateral. Motor strength was normal. Examination of the hips showed full range of motion, although Plaintiff referred to tenderness. Examination of both knees showed no effusion, and no instability. T. 506. Flexion was 105 degrees and extension was 0 degrees bilateral. Examination of the ankles showed full range of motion and the neck and upper extremities showed no complaints. T. 508.

X-rays of the lumbosacral spine and right and left hips were negative. X-ray of the right knee showed moderate narrowing of the medial joint with a small spur of the distal medial femoral condyle

8

and medial tibial plateau. X-ray of the left knee showed moderate narrowing of the medial joint and a small spur on the distal lateral femoral condyle. Diagnosis was moderate osteoarthritis of both knees, low back pain and painful hips. T. 507.

Dr. Rodriguez completed a physical capacity assessment and opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; sit for four hours at a time for a total of eight hours in an eight-hour workday, and stand and walk for 30 minutes at a time for a total of four hours each per day for a total of eight hours standing and walking. T. 511-12. Dr. Rodriguez opened that Plaintiff did not need a cane to ambulate, that she could continuously use her upper extremities for all activities and could frequently use foot pedals. T. 512-13. He further opined that Plaintiff could occasionally climb stairs and ladders, kneel, crouch and crawl, and could frequently balance and stoop. T. 514.

On August 27, 2007, Plaintiff presented to one of Dr. Oviedo's colleagues at QualMed for her annual physical, and her examination was "unremarkable." T. 481.

On October 8, 2007, Plaintiff went to the hospital complaining of left flank pain and rectal bleeding. She arrived as a walk-in with no assistance. T. 553. Notes indicate that Plaintiff "appear[ed] in no apparent distress" and was "cooperative, pleasant, quiet," and that Plaintiff "[w]alks outside room at least twice a day and inside room at least once every two hours during walking hours." T. 554. There was no limitation on mobility, and she was noted to "make[] major and frequent changes in position without assistance." T. 554. She was noted to "move[] in bed and or chair independently" with "sufficient muscle strength to lift up completely during move." T. 554. Plaintiff was "intact motor and sensory throughout" and her mental status was normal. Plaintiff was diagnosed with a kidney stone with infection and was discharged home on antibiotics. T. 559.

On October 30, 2007, Dr. Oviedo of QualMed prescribed Plaintiff a four legged cane for "extreme obesity." T. 569.

On November 9, 2007, Vidal Lopez, M.D., a psychiatrist with the Miami Behavioral Health Center completed a mental capacity assessment and opined that Plaintiff had a fair ability to follow work rules, relate to co-workers, deal with the public, understand, remember and carry out simple job instructions, but that she had poor or no ability to use judgment, interact with supervisors, deal with work stresses, function independently, maintain attention/concentration, understand, remember and carry out complex and detailed job instructions, maintain personal appearance, relate predictably in social situation and demonstrate reliability. T. 573-75.

### ALJ's Decision

On January 3, 2008, the ALJ issued her decision, in which she found that Plaintiff suffered from the severe impairments of obesity, depression, and osteoarthritis of the knees. T. 22-23. The ALJ further found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Appendix 1, and that Plaintiff had the residual functional capacity to perform the full range of light work and the mental capacity to perform a full range of unskilled work. T. 23-24. The ALJ concluded that these impairments did not prevent Plaintiff from performing her past relevant work as a cashier, and that she was therefore not disabled. (T.28).

### DISCUSSION

#### I. Analysis and Applicable Law

Social Security regulations establish a five-step sequential analysis to arrive at a final determination of disability. See 20 C.F.R. §404.1520, 20 C.F.R. §416.920 (a)-(f). The ALJ must first

10

determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. § 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. § 404.1520 (c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. §404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the claimant's disability to perform other work. See Gibson v. Heckler, 762 F.2d 1516, 1518, n. 1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. §404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R. § 404.1520 (e)-(f).

The Court's review of factual findings in disability cases is limited to determining whether there is substantial evidence in the record to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). Substantial evidence is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a

11

conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not re-weigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989).

With respect to the Commissioner's conclusions of law, including the proper standard to be applied in reviewing claims, no presumption of validity applies. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure of the Commission to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145-46 (11th Cir. 1991); see also Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## II. Application of Law to Facts

In the present case, the ALJ found, based on the record in its entirety, that although Plaintiff suffered from the severe impairments of obesity, depression, and osteoarthritis of the knees, they did not meet or exceed a listed impairment, and Plaintiff retained the residual functional capacity "RFC") to perform her past relevant work as a cashier, which is classified as unskilled light work.

Plaintiff argues that the ALJ failed to consider Plaintiff's obesity according to Social Security Ruling (SSR) 02-01p, which requires the ALJ to consider the effects of obesity when determining the Plaintiff's RFC, and that she failed to consider the combined effects of Plaintiff's impairments when making her RFC determination, particularly in light of the opinion of Dr. Oviedo of QualMed.

In making her finding of no disability, the ALJ stated that she was giving controlling weight to the physical evaluation provided by consulting orthopedic surgeon Dr. Ubaldo Rodriguez, stating: "Although obesity can affect a person's ability to perform normal daily activities and must be assessed even though it is no longer a listed impairment, Dr. Rodriguez's exam clearly documented the claimant as having normal strength and muscle tone." T. 27. The ALJ further noted that Dr. Rodriguez used objective radiographic testing to assess the severity of the claimant's knee impairment as well as her alleged back and hip problem, and that his examination was consistent with the earlier consultative examinations all of which documented a normal gait and normal muscle tone and strength. The ALJ also noted that Dr. Rodriguez's opinion was consistent with Dr. Gonzalez-Diaz's reported assessment that Plaintiff was over reporting and exaggerating her symptoms (T. 28) and that it was strengthened by the October 2007 Palmetto General Hospital reports, which reported Plaintiff being in no physical distress, being able to lift her own weight to transfer positions easily without assistance and walking frequently every day both inside and outside of her room with no complaints of pain. T. 28. The ALJ also noted her consideration of the opinions of the state agency physicians.

Although the ALJ adequately supported her acceptance of Dr. Rodriguez's opinion, the ALJ failed to discuss what weight, if any, she was giving to the opinion of Plaintiff's treating physician, Dr. Oviedo of QualMed, who opined that Plaintiff could not lift, could stand and/or walk only two to four hours in an eight-hour workday, and could sit for only two hours without interruption(T. 493-94), and

13

that Plaintiff was unable to perform light or sedentary work activity on a full-time basis. T. 496.[2]

The Eleventh Circuit has held that the opinion of a treating physician

> must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary. The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error.

MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); see also Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004). Good cause exists when "the (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips, 357 F. 2d at 1241.

In his Motion, the Commissioner points to reasons why Dr. Oviedo's opinion could properly have been rejected, e.g., because it was not supported by his own treatment notes. However, the ALJ made no such finding in her decision. In fact, the ALJ never references the Medical Assessment of Ability to Do Work Related Activities prepared by Dr. Oviedo at all. It is therefore impossible for this Court "to determine whether the ALJ applied the proper legal standard and gave the treating physician's evidence substantial or considerable weight or found good cause not to do so." Wiggins, 679 F.2d at 1390. Furthermore, it would be improper for this Court to "re-weigh[] the evidence and engag[e] in conjecture that invades the province of the ALJ." Nyberg v. Commission of Social Security, 179 Fed.App. 589, 592 (11th Cir. 2006). Accordingly, remand is appropriate.

---

[2] In his July 10, 2007 Medical Assessment, Dr. Oviedo noted that he had been seeing Plaintiff since October, 2004.

## RECOMMENDATION

Wherefore the undersigned respectfully recommends as follows:

1. That Plaintiff's Motion for Summary Judgment be **GRANTED**;

2. That Defendant's Motion for Summary Judgment be **DENIED**; and

3. That this case be **REVERSED** and **REMANDED** to the Commissioner for further proceedings as discussed herein.

The parties have ten (10) days from the date of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Cecilia M. Altonaga, United States District Judge for the Southern District of Florida. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988).

**DONE AND ORDERED** in Chambers at Miami, Florida, this 3rd day of March, 2009.

STEPHEN T. BROWN
UNITED STATES MAGISTRATE JUDGE

cc: Honorable Cecilia M. Altonaga
    counsel of record